■ SIDNEY POITIER, Respondent, v AMERICAN BROADCAST COMPANIES, INC., et al., Appellants.—Order, Supreme Court, New York County, entered on June 21, 1977, granting plaintiff's motion for leave to amend his complaint, insofar as the order permitted plaintiff to allege new causes of action for *quantum meruit* and promissory estoppel, reversed, on the law and the facts, and the motion denied, without costs or disbursements. Plaintiff sues American Broadcast Companies (ABC) for breach of an express oral contract calling for him to play the featured role in a movie to be produced by ABC. The action was commenced in 1971. Plaintiff filed a note of issue and statement of readiness in 1976, after the completion of pretrial discovery proceedings. Trial was scheduled for November, 1977, but on May 19, 1977, plaintiff moved for leave to amend the complaint to assert new causes of action, *ex contractu,* based on promissory estoppel and *quantum meruit.* In justification, plaintiff argues that such amendment will not prejudice defendant, inasmuch as no new facts are alleged and *quantum meruit* would have to be submitted to the jury, with or without an amendment before trial. Plaintiff concedes that the facts underlying the new causes of action sought to be added have been known to him since the commencement of this action. His knowledge of these facts for six years, absent any excuse for the delay in seeking an amendment, bars the granting of such relief at such a late date. *Gross & Co. v Damor Realty Corp.,* 60 AD2d 541.) Moreover, contrary to plaintiff's contentions, new facts are being introduced by the amendment sought, with resultant prejudice to defendant. The original complaint alleges an express oral contract, known in the trade as a "pay or play" agreement, to pay plaintiff $750,000, irrespective of whether the movie was ever made. By this amendment, plaintiff now seeks to place a

monetary value on the meetings, script readings and other activity which occurred during the period in question. No longer is he alleging a contract where payment is due whether or not the picture is produced. Finally, plaintiff's contention that *quantum meruit* will be an issue at trial irrespective of pretrial amendment is tenuous. Where an action is brought upon a special contract of employment a recovery may be had upon a *quantum meruit* when the special promise is not established, but the evidence does, in fact, show the rendition of services under circumstances which imply an agreement to pay therefor. (*Sturtevant v Fiss, Doerr & Carroll Horse Co.*, 173 App Div 113, 115.) This is not the situation here. Based upon the present pleadings, any proof at trial would be directed toward the existence of an express contract. Evidence of plaintiff's attendance at meetings and other related activities would not be relevant on any agreement to compensate him *a la carte* for his efforts. These activities would merely be an indication of the fact that a movie was planned. Accordingly, an amendment at trial to conform the pleadings to the proof would. be improper. Under the contract, as pleaded, there was no promise, implied or otherwise, to pay for the services. What plaintiff is attempting is to introduce an entirely new and inconsistent theory of liability, not inferable from the allegations in the original complaint. This he may not do at this late date, even under our liberal provisions allowing for the amendment of pleadings, without justifying the inordinate delay. Concur—Birns, Lane, Sandler and Sullivan, JJ.; Lupiano, J. P., dissents in the following memorandum: Plaintiff Sidney Poitier, a well-known motion picture actor, moved for an order granting him leave to amend his complaint by the addition of alternative theories of liability upon the same facts alleged in the original complaint. As correctly observed by the Supreme Court: "Plaintiff's original complaint sets forth three causes of action seeking damages of $375,000. (the balance due on $750,000., $375,000 having been advanced by ABC* to plaintiff) under an oral 'pay or play' agreement to make a film known as 'Caribbean Idyl', which project was cancelled by ABC after plaintiff gave his approval to a proposed screen play written by a writer hired by defendants and had made himself available to do the film; a cause of action for affirmative relief directing the cancellation of a promissory note for $375,000. and an assignment of certain sums due plaintiff, given by plaintiff to ABC as security for the $375,000. advanced to plaintiff; and a cause of action for $84,135.75 due plaintiff by 1330 Features Corporation and ABC in connection with services rendered by plaintiff for a motion picture entitled 'For Love of Ivy.' Defendants' answer asserts the statute of frauds as a defense and counterclaims for the $375,000. advanced to plaintiff and secured by the promissory note, which it is alleged remains unpaid. Plaintiff proposes, under the same facts, to add causes of action for quantum meruit and promissory estoppel and thus, it is argued, there can be no prejudice or surprise to defendants." This action was commenced on July 31, 1971 by the service of a summons and complaint. In November, 1971, four months later, defendants took plaintiff's deposition wherein plaintiff was questioned concerning services which he performed in connection with "Caribbean Idyl." Paragraph 7 of the complaint alleges that "Plaintiff has duly performed all of the terms and conditions on his part to be performed under the said agreement between plaintiff and defendant ABC as above set forth." Acknowledging the presence of this allegation and the fact that "the terms and conditions" apart from script approval were not expressly stated in the complaint, defendants

---

* American Broadcasting Companies, Inc.

admit inquiry into the activities performed by Poitier in connection with the project at his deposition. "The law is well settled that where an action is brought upon a special contract of employment, a recovery may be had upon a *quantum meruit* when the special promise is not established, but the evidence does, in fact, show the rendition of services under circumstances which imply an agreement to pay therefor. *(Sussdorff v. Schmidt,* 55 N, Y. 319; *Baumann v. Manhattan Consumers' Brewing Co.,* 97 App. Div. 470; *Rubin v. Cohen,* 129 id. 395; *Clapp v. Schaus,* 156 id. 681.)" *(Sturtevant v Fiss, Doerr & Carroll Horse Co.,* 173 App Div 113, 115; see *Lockhart v Hamlin,* 190 NY 132; *Harmon v Peats Co.,* 243 NY 473; *Byrne v Gillies Co.,* 144 App Div 677; *Walar v Rechnitz,* 126 App Div 424; see, also, NY⁴ Damages Law, §§ 194, 533.) The original complaint is broad enough to permit a recovery on an express contract or on *quantum meruit* and, pragmatically, was so regarded by defendant. A comparison of the original complaint with the amended complaint is illuminating. The original complaint contained, *inter alia,* the following allegations: (a) that plaintiff and defendant agreed in August, 1968 that "plaintiff would act in a motion picture for defendant ABC, the screenplay of which would be approved by plaintiff", (b) "That defendant ABC would pay plaintiff the sum of * * * $750,000", (c) "That defendant ABC's commitment to the plaintiff was on a 'pay or play' basis, which term by usage and custom in the motion picture industry was and is understood to mean that defendant ABC had the right not to produce the motion picture approved by the plaintiff but in the event of the exercise of such right by defendant ABC, plaintiff would in any event be entitled to be paid", (d) that "after August, 1968 several screenwriters in succession were engaged by defendant ABC to write a screenplay bearing the tentative working titles Caribbean Idyl and Arrival & Departure," (e) that "Plaintiff has duly performed all of the terms and conditions on his part to be performed" and (f) that the promissory note for the advance of $375,000 was to secure "defendant ABC against plaintiff's death or disability (which would thereby render it impossible for plaintiff to perform his required services), and/or against plaintiff's default in the performance of his required services." The amended complaint contains the identical allegations with the alternative legal theories of *quantum meruit* and promissory estoppel pleaded as legal conclusions flowing from these identical allegations. The only added paragraph in the amended complaint that contains assertions that were not *expressly* made in the original complaint is paragraph 13, which reads: "At the request of defendant ABC, plaintiff held himself available to act in a motion picture for defendant ABC and performed services for defendant ABC in connection therewith, including meetings with writers of the proposed scripts for the motion picture, review and comment on the proposed scripts, examination of proposed sites for the filming of the motion picture, and consultation with representatives of defendant ABC during the course of the development of the motion picture project." All that paragraph 13 of the amended complaint does is to state expressly what is covered implicitly in the original complaint and to summarize plaintiff's testimony at the deposition which ABC itself conducted of plaintiff. In allowing the amendment prior to trial (the trial being scheduled to commence some six months later), the Supreme Court did not abuse its discretion. CPLR 3025 (subd [b]) in pertinent part provides that "Leave shall be *freely given* upon such terms as may be just" (emphasis supplied). Patently, the "policy is to permit amendment, for almost any purpose, as long as the adverse party cannot claim prejudice" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3025,

C3025:4). Not only is there no demonstration of prejudice by defendant, but under the circumstances herein, there is no basis to utter a claim of prejudice, however conclusory. Even assuming that defendant's strained contention that new factual issues have been raised is genuine, defendant has been granted, even without requesting it, the opportunity to obtain discovery on those issues. To reiterate, and as so aptly noted by the Court of Appeals: "In this State where a litigant fails to establish the right to recover upon an express contract he may, in the same action, recover in *quantum meruit. (Harmon v. Peats Co.,* 243 N. Y. 473, 476; *McKeon v. Van Slyck,* 223 N. Y. 392, 399, 401.)* If warranted by the pleadings and proof, the case may be submitted to a jury on both theories and an election need not be made. (See *McKeon v. Van Slyck, supra; Sturtevant v. Fiss, Doerr & Carroll Horse Co.,* 173 App. Div. 113, 115; *Byrne v. Gillies Co.,* 144 App. Div. 677, 678; *Walar v. Rechnitz,* 126 App. Div. 424; 1 Nichols on New York Practice, p. 1085.) In *Walar v. Rechnitz (supra),* where it was indicated that a plaintiff should not be required to elect but should be allowed to attempt recovery, in the same action, on express contract or in *quantum meruit,* it was suggested (p. 426) that after an adverse judgment in an action strictly limited to the theory of express contract a *new* action in *quantum meruit* could yet be maintained. (See, also, Restatement, Judgments, § 65, comment j.)" *(Smith v Kirkpatrick,* 305 NY 66, 73.) Under the express agreement as alleged in the complaint, it was incumbent upon plaintiff to consider proposed screenplays which would be submitted for his approval. Service would be rendered by plaintiff in connection with this approval of a screenplay and the rendition of such service and related good faith activity by plaintiff in securing a screenplay of the requisite value to secure his approval, would be clearly envisioned by the parties. Accordingly, the majority's observation that based upon the original complaint and answer, "any proof at trial would be directed toward the existence of an express contract," fails to perceive that plaintiff, in advancing such proof, might fail to demonstrate an *express* agreement, but might demonstrate the rendition of services under circumstances where the law will imply an agreement to pay the reasonable value of such services. The spirit of the CPLR is aimed at liberalization with respect to pleadings and the avoidance of obeisance to the strictures of technicality. For example, even under CPLR 3211 (subd [a], par 7)—failure to state a cause of action—it has been recognized that if from the four corners of the pleading, regardless of its form and draftsmanship, factual allegations are discerned which taken together manifest any cause of action cognizable at law, the pleading does state a cause of action (see *Foley v D'Agostino,* 21 AD2d 60). The majority rationale mandates that a plaintiff suing on an express special contract of employment *specifically* plead *quantum meruit,* i.e., an implied promise to pay for services rendered. No such pleading requirement exists. Indeed, heretofore plaintiff was not even required to make an election between suing on the express contract or suing in *quantum meruit.* The correct perception of the alleged express "pay or play" agreement is not that it foreclosed or forbade plaintiff from rendering service, clearly a *reductio ad absurdum,* but that it afforded defendant the option at any time to cancel the project while affording to plaintiff the security of knowing that he would be compensated. This is a customary provision in the motion picture industry which depends in large measure on the services of well-known stars for the success of its commercial products and endeavors. Surely it is not argued that defendant would accept a promise from plaintiff that if and when the picture was to be made, plaintiff would perform if he were otherwise available. The object of such agreement

is to, in effect, reserve the services of the "star." Clearly, in thus making himself available, i.e., in being thus reserved, the "star" is entitled to the security of knowing he will be paid. Otherwise, no "star" under ordinary circumstances would forego other lucrative opportunities on the possibility a picture would be made with the attendant possibility he may or may not be paid. The amendment sought herein does not partake of that degree of substantiality envisioned and proscribed by this court in *Gross & Co. v Damor Realty Corp.* (60 AD2d 541). In that case plaintiff maintained two causes of action, the first against defendant Damor Realty Corp. seeking recovery for alleged brokerage services in the sale of Damor's property to defendant Goldberg, and the second against Goldberg as purchaser on the ground that Goldberg "misrepresented" to Damor that a broker other than plaintiff brought about the sale. The case was scheduled for trial on May 20, 1977, and on May 17, 1977, only three days before and on the very eve of trial, plaintiff sought to amend to plead a further cause of action against Goldberg, alleging breach of an alleged oral agreement on the part of Goldberg to solely use plaintiff's brokerage services. This proposed amendment was viewed by this court as a substantial one warranting a convincing reasonable excuse for the delay in waiting until the eve of trial. The circumstances were implicit with prejudice. To state the facts of the *Gross & Co. (supra)* case is to perceive its inappositeness to the instant matter. If the opposing party can show prejudice, the amendment will not be allowed. As already noted, no prejudice has been shown. Further, not only were the facts upon which the motion for the amendment is based known from the outset by both sides herein, such facts are fairly embraceable within the original complaint viewed against the liberality with which *quantum meruit* is treated as an alternative theory when a plaintiff sues on an alleged express contract of special employment. Accordingly, the order of the Supreme Court, New York County, entered June 21, 1977, granting plaintiff's motion for leave to amend his complaint, insofar as the order permitted plaintiff to allege new causes of action for *quantum meruit* and promissory estoppel, should be affirmed.